## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**PATTI COMBS,**

      **Plaintiff,**

    **v.**

**WAL-MART, INC.,**

      **Defendant.**

**Case No. 1:21-cv-670**

**JUDGE DOUGLAS R. COLE**

## <u>OPINION AND ORDER</u>

On October 3, 2019, Plaintiff Patti Combs fell while browsing Christmas merchandise at a store in Mason, Ohio, owned by Defendant Wal-Mart, Inc., (Wal-Mart). Claiming that her injuries and attendant medical costs were caused by Wal-Mart's negligent maintenance of its facilities, Combs sued Wal-Mart seeking to recover $250,000. (Compl., Doc. 4). With discovery now closed, Wal-Mart has moved for summary judgment arguing that Combs failed to adduce evidence to prove her entitlement to relief. (Doc. 20). For the reasons stated below, the Court **GRANTS** Wal-Mart's Motion for Summary Judgment (Doc. 20) and **DISMISSES** Combs's Complaint (Doc. 4) **WITH PREJUDICE**.

## BACKGROUND

On the day in question, Combs wandered alone through the aisles of the Mason, Ohio, Wal-Mart store browsing merchandise while wearing flip-flop sandals.[1]

---

[1] At her deposition, Combs initially disputed the characterization of her sandals as "flip-flops" and seemed to prefer the term "summer sandals." (Doc. 18, #107). But she equivocated saying, "[y]ou can call them flip flops or just sandals." (*Id.*). Defendants' proposed undisputed facts

(Doc. 18, #94–97, 107). After about 20 minutes of meandering without picking up anything (or handling a cart or basket), Combs entered an aisle in the store containing Christmas decorations. (*Id.* at #96, 98, 108). While walking down the aisle looking at those products, Combs's foot caught on what she described as a "crack" between the tiles. She lost her footing, spun around, and fell. (*Id.* at #98–99, 110). No one observed this incident. (*Id.* at #100–01, 196–97). Immediately following her fall, Combs walked over to the pharmacy to obtain help from an employee. (*Id.* at #101, 192). The employee recorded his interaction with Combs; there, he stated that Combs reported that "she slipped on the floor seal crack in between the floor tiles." (*Id.* at #192). The Customer Incident Report that Combs herself reviewed and signed stated that Combs had "[t]ripped on lines in floor [sic] near [C]hristmas" merchandise. (*Id.* at #103–04, 191). The fall caused injuries to Combs's right arm around her hand and wrist, which included a break of her right radius and ulna. (*Id.* at #100, 116–17). She was eventually treated for those injuries, which required a cast, carpal tunnel surgery, the placement of screws, and physical therapy to strengthen her digits. (*Id.* at #100, 114–18).

Seeking damages, Combs sued Wal-Mart in the Warren County Court of Common Pleas on October 1, 2021. (Doc. 4, #22). She raised one claim of negligence based on Wal-Mart's liability as a property owner to Combs as an invitee. (*Id.* at #23). And she sought relief in the amount of $250,000 and costs and fees. (*Id.* at #24). Wal-

---

refer to them as flip-flops. (Doc. 20-1 ¶ 6, #303). Combs did not dispute that characterization but objected to its relevance. (Doc. 21-1, #323). Accordingly, the Court refers to the footwear interchangeably as either sandals or flip-flops. But the Court's summary judgment decision does not turn on whether they were flip-flops, sandals, or another kind of "summer sandals."

Mart removed the case to federal court on the basis of diversity jurisdiction three weeks later, (Doc. 1, #1–2), and answered the same day, (Doc. 3). The parties proceeded to discovery, which was set to close on April 3, 2023. (Doc. 8). But the Court granted a brief extension of the expert deadlines to April 21, 2023, to permit Combs to file disclosures related to any rebuttal experts. (2/23/23 Not. Order).

Wal-Mart then moved for summary judgment on May 1, 2023. (Doc. 20). It argues that Combs (1) has failed to present evidence to establish the existence of a hazard that caused her fall, (2) cannot overcome the doctrine that bars liability for open-and-obvious hazards, and (3) identified no evidence tending to prove that Wal-Mart was aware of any hazard that contributed to her injuries. (*Id.* at #292–300).

Combs responded in opposition. (Doc. 21). She argues that there is genuine issue of material fact for the jury by relying on so-called demonstrative evidence (three photographs labeled Figures 1 through 3) not disclosed during discovery, coupled with a declaration Combs executed after Wal-Mart had moved for summary judgment. (*Id.* at #312; Doc. 21-2; Combs Decl., Doc. 22, #339–40). Wal-Mart then replied. (Doc. 24). But it also simultaneously filed objections pursuant to Federal Rule of Civil Procedure 56(c)(2). (Doc. 23). In the latter, it argued that Combs's citations to Figures 1, 2, and 3 and her tardy declaration were improper because neither constituted competent evidence on which the Court could rely. (*Id.* at #341–43). That prompted additional briefing—Combs responded in opposition to the stated objections, (Doc. 25), and Wal-Mart replied, (Doc. 26).

With those briefs filed, the matter is ripe for review.

3

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the non-movant bears the burden of proof at trial, as is the case here, the movant can establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law by showing that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). As the Sixth Circuit has made clear, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

In sum, this standard requires the non-moving party, at this stage, to present some "sufficient disagreement" that would warrant submission of the dispute to a jury. *See Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## LAW AND ANALYSIS

Technically, there is only one pending motion on this case's docket: Wal-Mart's summary judgment motion. But because whether or not to grant summary judgment turns on what evidence is properly in the record, the Court must overcome the stumbling block created by Wal-Mart's objections to the figures included in Combs's opposition brief and to the declaration attached to it. Once the Court resolves whether it can consider that evidence, it will turn to the summary judgment analysis.

### A.     Wal-Mart's Objections

Wal-Mart objects to specific evidence Combs cites to support her assertions that there remains a genuine issue of material fact that should reach a jury. Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or [to] dispute a fact cannot be presented in a form that would be admissible in evidence." These objections "function[] much as [] objection[s] at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 737 (S.D. Ohio 2017) (citation omitted). When sustaining an objection, "the Court should use a scalpel, not a butcher knife" and excise only those portions that lack a proper foundation. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (cleaned up). Here, Wal-Mart objects to Combs' declaration and certain figures in her opposition brief. The Court addresses them in that order.

## 1. Combs's Later-Executed Declaration

Wal-Mart advances two objections to the declaration: (1) that certain statements lack a proper foundation; and (2) that it constitutes a sham affidavit. (Doc. 23, #343–46).

Wal-Mart's objections related to foundation are directed at paragraphs 4, 5, 7, and 8 of Combs's late-filed declaration. Those paragraphs, respectively, purport to identify (1) the standard measurements of the tiles at the store, (2) the "usual[]" nature of the grout in between the tiles, and (3) whether the claimed gap that supposedly caused Combs to trip looks like the usual color of the grout. (Doc. 22, #336–37). The problem is that the declaration provides no reason to believe that Combs would have personal knowledge of these matters. More specifically, Combs has not established that (1) she has measured the size of the standard tile used for the store's floor (let alone established what that standard tile is), (2) she would have any awareness of the store's usual choice for grout or caulking, or (3) she can claim knowledge that the line over which she tripped resembles the standard grout color (again without even establishing how she knows what that color is). *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469–70 (N.D. Ohio 2007). Combs is correct that she would have personal knowledge to describe the floor she actually observed. (Doc. 25, #361). But paragraphs 4, 5, 7, and 8 do not do that. Those paragraphs speculate about the standard tile and grout throughout the superstore, which means those assertions sweep beyond Combs's personal observations from when she stumbled. *Gonzalez v. Parker Hannifin Corp.*, No. 2:18-cv-212, 2020 WL 13698922, at *3 (E.D. Tenn. Nov. 16, 2020) (striking paragraphs that were speculative and beyond the affiant's

personal knowledge because plaintiff had failed to explain how she knew details about the disciplinary records of other employees and how she could demonstrate that the breaks taken by others were generally known to be unauthorized). Perhaps, she could have returned to the store to gather such information. But if so, that appears nowhere in the declaration. And absent something along those lines—details to which Combs has not testified—these assertions veer outside the scope of Combs's personal knowledge. Accordingly, the Court strikes paragraphs 4, 5, 7, and 8 of Combs's declaration for lack of foundation.

That leaves Wal-Mart's sham affidavit objection. The sham affidavit doctrine bars a party from "creat[ing] a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (citation omitted). The application of this doctrine turns on whether there is an actual contradiction between the deposition testimony and to what the plaintiff swears in her late-filed affidavit or declaration. *Id.* That said, while "deponents have no obligation to volunteer information the questioner fails to seek[,] … a deponent may not 'duck her deposition[.]'" *Id.* (citations omitted). So a deponent who refuses to respond to specific questions about material details of her case may not use a later-filed affidavit or declaration to answer those questions. *Id.*

Here, Wal-Mart challenges those statements in paragraphs 6, 9–12, 17, and 19 referring to Combs's description of the alleged hazard and whether she had a direct line of sight to it. Wal-Mart argues that the paragraphs should be stricken because

Combs refused to answer related questions when she was deposed. (Doc. 23, #344–45; Doc. 26, #377–78).

At her deposition, Combs was asked about the floor and the space between the tiles several times. Combs first testified and reaffirmed that her recollection of the floor was only that the grout in between the tiles was low (rather than missing)—a characteristic she "didn't see [] prior to [her] fall." (Doc. 18, #93). When asked to describe what happened, she recounted that she was "completely [] caught": the whole incident "happened so fast" that "before [she] knew it" her foot was "caught in … between the tile … [and she] lost [her] footing." (*Id.* at #98). The questioner then probed Combs's story with reference to the incident report that a Wal-Mart staff member completed on the day of her tumble—the staff member recorded that Combs had reported she "[t]ripped on lines in floor [sic]." (*Id.* at #191). When asked if the report correctly recorded what happened and whether the referenced "lines" meant the "tile lines on the floor," Combs's immediate response was to state she "d[id]n't know"—justifying this retort by noting she did not author the report. (*Id.* at #105). When asked again if the report were incorrect and to explain the cause of her fall, Combs reiterated that her "foot got caught" on the tile lines without further elaboration. (*Id.*).

After a tangent, the deposition testimony returned to this topic, and Combs underwent a more specific line of questioning about the floor cracks that allegedly caused her to trip. (Doc. 18, #107 ("So let's talk about these floor cracks.")). The questioner showed her a photograph of a tile floor taken in the store at issue. Combs

noted that she could not confirm that the photograph constituted the exact place where she tripped. (*Id.* at #108–09). But the questioner responded by making clear that he wanted her to answer whether the picture was *representative* of the type of hazard that caused her to fall. In other words, were the depicted spaces between the tiles the "hazard" to which she referred as causing her injuries? (*Id.* at #109–10 ("I'm not asking about location again, I'm just asking … for what caused you to fall[.] … [W]hat I'm showing you in these photographs, is that representative of something that may have caused you to fall?")). Combs resisted answering this clarified question several times before finally responding that she "d[id]n't know" what might have caused her to fall other than the mere fact that there were lines between the tiles and that "it's a little tough to remember at that [sic] point." (*Id.* at #110). Moreover, while the questioner attempted to have Combs elaborate on her Complaint's allegation that there was missing grout in the aisle where she fell, Combs simply reiterated that "there was an area that [her] foot definitely got caught on … [that] felt like a crack" before continuing to fixate on whether the photos shown were of the actual aisle. (*Id.* at #111–12). And, consistent with her deposition testimony that she really "didn't know" what aspect of the floor may have caused her to fall, nowhere did she reiterate the statement from the Complaint that there was a "gap" that was seven to eight inches long, and a quarter to a half inch wide, where caulk or grout was missing.

In contrast—and despite declining to do so at her deposition when given multiple opportunities to do so—Combs's sworn statements now magically recount

specific details about the state of the floor and the grout between the tiles. (Doc. 22 ¶¶ 6, 9–12, 19, #336–38 (declaring that a length of grout was entirely missing from between the tiles, there were no remnants of it around this supposed gap, and that she fell because her foot was caught in the claimed missing gap)). She avers, for example, that there "is a ¼ to ½ inch gap between tiles," and that her foot "became stuck in an area where a seven-to-eight-inch-long piece of caulk was missing between two of the tiles." (*Id.* ¶¶4, 6, #336). Combs cannot "duck" questions at her deposition despite "having been examined at length" about the exact issue to which she now confesses knowledge. *Reich*, 945 F.3d at 976 (cleaned up). And while Combs now declares she "s[aw] the floor clearly [even] in [her] peripheral," (Doc. 22 ¶ 17, #337), that flatly contradicts her deposition testimony during which she claimed she "didn't see" what on the floor caused her to fall, (Doc. 18, #93). Given Combs seeks to use her late-filed declaration to create a genuine issue of fact despite failing to establish these facts via responsive answers to questions directed at these exact issues at her deposition—now, gainsaying her prior testimony on the same topics—the Court declines to credit the newly offered details when assessing the summary judgment record. *Powell-Pickett v. A.K. Steel Corp.*, 549 F. App'x 347, 352–53 (6th Cir. 2013) (declining to credit plaintiff's later-created affidavit providing details about her case contrary to her deposition testimony, in which "[s]he rejected … many chances to provide the basics of her lawsuit").

Combs attempts to suggest her sworn declaration merely supplements her testimony by highlighting purported consistencies between her statements and her

deposition testimony. (Doc. 25, #363–67).[2] But she cannot overcome the conflicts identified above (e.g., declaring that she observed the spot where she tripped before falling despite testifying to the contrary or declaring that the grout or caulk was missing where she tripped despite testifying at her deposition that it was merely low). (*Compare* Doc. 18, #93, *with* Doc. 22 ¶¶ 6, 9–12, 17, 19, #336–38). Sure, Combs is correct to note that *very specific* questions about whether broken caulk or grout had been cleared away were not asked. (Doc. 25, #364–65). But that is on account of Combs's refusal at the deposition to provide basic details about the tiles and the separation between them when repeatedly asked about them. A questioner cannot reasonably be expected to probe for precise details about an alleged hazard's condition when a deponent is not forthcoming about even general descriptions of the hazard.[3]

---

[2] At several points, Combs tries to cite her unsworn and unverified Complaint to claim her later-executed declaration is consistent with the summary judgment record. (*E.g.*, Doc. 25, #363). The problem with that tactic should be so obvious as not to require an explanation. But to reiterate what well-settled caselaw has made abundantly clear, allegations are not evidence: "It must not be forgotten that we are dealing with pleadings, *not evidence.*" *Globe Refin. Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 546 (1903) (emphasis added). And Rule 56(e) does not "permit plaintiffs to get to a jury on the basis of the allegations … coupled with the hope that something can be developed at trial in the way of evidence to support those allegations." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968).

[3] A hypothetical shows where Combs errs. Assume a deponent testifies that he was walking outside and that his stated reason, when asked what motivated him, was "the fresh air." And assume he sought to file a later-executed affidavit affying that he owned a rottweiler and that he also went outside to walk the dog. It would not be logically inconsistent to choose to go for a walk for both reasons—walking the dog and getting fresh air. But it would be impermissible and inconsistent in practice for the deponent to claim that such theoretical consistency meant his later-executed affidavit only supplemented his deposition testimony—especially if the presence of the dog, or a full accounting of the reasons for the walk, is clearly relevant to the case at issue. The deponent omitted mention of his dog when asked point-blank why he walked outside. He cannot now introduce the dog into the picture and try to defend his newly supplied detail regarding a relevant issue on the grounds that there were no specific questions about the dog at the deposition. Rather than supplement the deposition testimony, the deponent shirked giving a fully responsive answer at the deposition and

*Powell-Pickett*, 549 F. App'x at 352–53 ("It is 'impossible logically to distinguish between the case of a downright refusal to testify and that of evasion by obvious subterfuge and mere formal compliance.'" (quoting *United States v. Appel*, 211 F. 495, 495 (S.D.N.Y. 1913) (L. Hand, J.))).

In short, "[a]ll [] signs point the same direction; [Combs] made no attempt to clarify or [to] qualify her answers on th[ese] issue[s] at her deposition[,] … did not claim that her earlier testimony reflected confusion about the questions asked," and has not claimed that she came upon new evidence about where she fell that she did not possess at her deposition, any of which could provide some explanation for her terse and meager deposition responses. *Reich*, 945 F.3d at 977. That compels the conclusion the Court has reached here—that these paragraphs in Combs's declaration create a sham issue of fact. So the Court will also strike paragraphs 6, 9–12, 17, and 19 of Combs's late-filed declaration, which impermissibly attempt to manufacture post hoc a genuine issue of material fact.

### 2.      Figures 1–3

Next is Wal-Mart's objection that Combs's figures—purporting to hypothesize how Combs's foot could have been caught in a space between tiles without grout or caulk—constitute inadmissible evidence because of a lack of proper foundation. (Doc. 23, #346–47). The figures Combs produced claim to describe "how [Combs's] shoe became stuck in the gap." (Doc. 21, #312). That said, Combs (unsurprisingly)

---

instead lay in wait until the summary judgment motion was filed to pile on the details. "If such [details were responsive to the deposition questioning, the deponent] … was required to bring it out at the deposition." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Rule 56 does not permit such gameplaying.

acknowledges that these figures do not constitute direct evidence of the events. In other words, she admits that "[t]hese are not photographs of the incident." (*Id.*). Rather, they are at most depictions of what *could have* happened. But there is a central problem with Combs's representation that the images "accurately demonstrate how Ms. Combs's [footwear] became stuck in the gap." (Doc. 21, #312). For the images to be admissible evidence of the mechanics for how Combs fell, she needs to provide competent evidence properly laying a foundation that the measurements used to recreate the alleged hazard are in fact accurate. *See* Fed. R. Evid. 901(a). But no such evidence has been introduced. And that means the Court must disregard the images as lacking a sufficient foundation to constitute a valid recreation of the accident.

Combs objects that the images are based on "her own first-hand knowledge." (Doc. 25, #358). And by that, it appears Combs is referring to the assertions in her declaration about the claimed size of the space between the floor tiles in the Wal-Mart store generally and the seven-to-eight-inch-long gap where the caulk was allegedly missing. (Doc. 22 ¶¶ 4, 6, #336). But for the reasons stated above, Combs cannot cite those assertions to lay a foundation for Figures 1–3—the Court has struck the relevant paragraph from Combs's sworn declaration. *See supra* Section A.1. In other words, Combs has no basis for claiming she made any measurements of the tiles and spaces between them where she purportedly fell. In fact, rather than identify where, Combs's deposition testimony made clear that she could not explain or identify the location the purported incident occurred. (Doc. 18, #109 (stating she "d[id] not

recall exactly" where in the aisle she fell); *id.* at #110 (In response to question about what caused Combs to fall, she testified, "I don't know. That day was—it's a little tough to remember at that point. After my fall, things became a little bit tough.")). And without that, Combs cannot identify competent record evidence to lay a proper foundation for Figures 1–3, thereby rendering them only bald-faced conjecture. Accordingly, Combs's attempt to repackage them as "demonstrative evidence" is of no moment. (Doc. 25, #358–59). Without a proper foundation, the images, even if demonstrative, cannot be considered as part of the record. *Bard v. Brown Cnty.*, No. 1:15-cv-643, 2018 WL 11357533, at *3 (S.D. Ohio Dec. 31, 2018) (noting that because "[d]emonstrative exhibits are pedagogical devices used to aid a jury's understanding of … underlying evidence[,] … [they are] more akin to argument than evidence, and the Court does not consider them evidence standing alone").

But the problems with the figures go even beyond that. Assume for the moment that she had substantiated that the "gap" was ¼" to ½" wide as alleged. (Doc. 4 ¶ 5, #22). The "gap" she uses in the demonstrative photos, according to the depicted ruler, is ⅝"—25% wider than the maximum gap size to which she attested, even in her late-filed declaration. (*Compare* Doc. 21, #312, *with* Doc. 22 ¶ 4, #336). Then consider the "sole" that is depicted in the figures. Clearly, the relative sizes of the gap, on one hand, and the sole depth, on the other, matter greatly to the depicted accident mechanism. But nowhere, not even in the late-filed declaration, does Combs offer any evidence substantiating that the sole depth in the figures corresponds to the footwear Combs was wearing. In short, even assuming that a lay witness could provide a

sufficient foundation for the accident mechanism depicted in the figures (a separate issue and one the Court does not reach), the "demonstratives" here are not fair representations of even Combs's own account of events from her late-filed declaration. So the Court will not rely on them.

*　　*　　*

Altogether, the Court sustains Wal-Mart's objections to and consequently strikes paragraphs 4–12, 17, and 19 of Combs's declaration, (Doc. 22, #336–38), and Figures 1, 2, and 3, (Doc. 21, #312), from the summary judgment record.

## B.  Summary Judgment

Having settled on the proper scope of the summary judgment record—which is limited to Combs's deposition testimony, (Doc. 18), her sworn declaration sans paragraphs 4–12, 17, and 19, (Doc. 22), and Figures 5–9 provided in line in Combs's opposition brief, (Doc. 21, #314–18)—the Court next turns to the pending summary judgment motion. To merit entry of judgment, Wal-Mart must show there is an absence of evidence for Combs to prove at least one of the elements of her claim. "To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122–23 (Ohio 2009). As this negligence claim is based on premises liability and there is no dispute that Combs was an invitee of Wal-Mart, Wal-Mart "had a duty to exercise ordinary care and to protect [Combs] by maintaining the premises in a safe condition." *Id.* at 123 (cleaned up). But if the

danger causing the alleged harm is "open and obvious," Wal-Mart owes Combs no duty of care because it "may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* Similarly, Wal-Mart's duty extends only to those dangers posing an unreasonable risk of harm of which it has actual or constructive knowledge. *Goodin v. Kroger Co.*, No. CA93-01-009, 1993 WL 220246, at *2 (Ohio Ct. App. June 21, 1993).

In its motion, Wal-Mart contends that summary judgment is proper because (1) Combs did not describe the hazard beyond mere speculation; (2) Combs has failed to present evidence that Wal-Mart had notice of the alleged hazard; and (3) the hazard, assuming it existed, is open and obvious. (Doc. 20, #292–300). With the express reminder that Combs cannot overcome the summary judgment hurdle unless she proffers *evidence*—she cannot rest on the combination of unsworn allegations and speculation, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968); *see supra* note 2—the Court finds it need address only the first two issues. As explained further below, Combs's wholesale lack of evidence to prove either Wal-Mart's duty or breach compels a dismissal of her negligence claim, thereby obviating the need to reach Wal-Mart's alternate open-and-obvious argument.

### 1.    Hazard[4]

Under Ohio law, "the failure to identify or explain the reason for a fall which occurs while a plaintiff is on property owned by a defendant precludes a finding that

---

[4] Though not argued, the Court notes there may be a threshold problem with the alleged hazard here—it may not be actionable under Ohio law. *McGuire v. Sears, Roebuck & Co.*, 693

the defendant acted negligently." *Howington v. Hoerst*, 515 N.E.2d 977, 978 (Ohio Ct. App. 1986). The Court agrees with Wal-Mart that Combs fails to meet her burden on this front.

Combs's deposition testimony provides only vague details suggesting that her foot caught on something on the floor, thereby causing her to fall: "I completely was caught [by surprise]. And before I knew it, … it happened so fast. … My foot got caught … in between the tile … [and] I lost my footing." (Doc. 18, #98). At no point during the deposition testimony did Combs provide a more concrete explanation of what happened other than to state that her foot caught on the "tile lines or … the cracks between tiles." (*Id.* at #105; *id.* at #111 ("I mean, there was an area that my foot definitely got caught on. It felt like a crack.")). And when Combs was asked point blank to explain what in the aisle other than the existence of those lines caused her

---

N.E.2d 807, 810 (Ohio Ct. App. 1996). "As determined by the Ohio Supreme Court[,] … an owner of private premises is not liable for injuries sustained as a result of a person tripping and falling on minor or trivial imperfections in the area traveled." *Id.* (citing *Helms v. Am. Legion, Inc.*, 213 N.E.2d 734, 735 (Ohio 1966)). A gap between tiles ranging from a quarter to half an inch, as alleged in the Complaint, (Doc. 4 ¶ 5, #22), may fall within the kind of "minor or trivial imperfections" one would anticipate encountering in a publicly-trodden tiled floor. Namely, everyday experience teaches that the spaces between tiles often have grout levels that vary. One need think only of the sidewalk blocks traversed during a typical walk to work. They are frequently uneven, do not have grout, and usually are spaced a quarter to half inch apart, or more. *Kimball v. City of Cincinnati*, 116 N.E.2d 708, 710 (Ohio 1953) ("We may take judicial notice of the fact which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little unevenness or irregularity in sidewalks, crosswalks, curbs, or pavements. As the result of various causes, climatic and otherwise, they are constantly occurring and recurring. Ordinarily they cause no difficulties. … It is the judgment of this court that the condition of the sidewalk [(two blocks were uneven with a change in height of between one-half to three-fourths of an inch)] must be considered a slight defect which, as a matter of law, did not form a basis of a charge of negligence on the part of the city."). There can be no doubt that the average person would take care to manage such (insubstantial) risks. Or at the very least, the law does not impose on property owners the obligation to attend to such minor hazards on pain of liability.

fall, she equivocated: "I don't know. That day was—it's a little tough to remember at that point." (*Id.* at #110). Even taking these oblique descriptions in the light most favorable to Combs, the Court is left with nothing more than speculation about what may have happened. Combs's attempt to create "[a]n inference of negligence [] [can]not arise from mere guess, speculation, or wishful thinking." *Goodin*, 1993 WL 220246, at *2; *Mines v. Russo's Stop & Shop*, No. 55073, 1989 WL 253888, at *2 (Ohio Ct. App. Feb. 23, 1989) (finding that deposition testimony referencing a depression in the pavement where plaintiff fell could not create an inference of negligence when she "could not clearly say what caused her fall"); *cf. Howington*, 515 N.E.2d at 978 (concluding that while plaintiff testified at her deposition only that she fell near the top step of the stairs where her foot was caught, the daughter's affidavit created a genuine issue of fact because the daughter attested that she inspected the location where her mother fell and found loose carpeting and a metal strip sticking up).

Combs does not really contest this lack of evidence; rather, she rests her hat on her Complaint's allegation about the gap in the floor purportedly lacking grout or caulk as well as her declaration to the same effect. (Doc. 21, #313; Doc. 21-1, #323–25). But again, allegations are not evidence. *See supra* note 2. And the Court struck the sworn statements in her declaration offering specific details about the alleged condition of the floor where she tripped, due to the conflict between those statements and her deposition testimony, which was, at best, equivocal about the nature of the hazard. *See supra* Part A.1. As a result, Combs can identify no record evidence permitting an inference that she is entitled to relief. (Doc. 21-1, #326 (Combs's

acknowledgment that she "did not produce any photographs identifying or establishing a hazard located in the Christmas aisle on date of incident [sic].")). Simply, her vague responses at her deposition that her foot was caught on the tile lines, without any further detail about what that means or how it might have caused her to trip, does precious little to move the needle past conjecture. And that lack of evidence of the existence of a hazard forecloses her negligence claim.

At root, it appears she is asking the Court to surmise that, solely because she tripped and fell, there must have been an unreasonably dangerous condition, which would require Wal-Mart's to demonstrate that was not the case. In other words, she seems to be tacitly invoking the doctrine typically referred to as res ipsa loquitur—or, "the thing itself speaks." The notion underlying the doctrine is that, if the type of accident at issue is one that typically would not occur absent negligence and the defendant had exclusive control of the instrumentality that caused the accident, then it is reasonable to assume that the defendant's negligence caused the accident unless the defendant can show otherwise. *Sherlock v. Strouss-Hirschberg Co.*, 4 N.E.2d 912, 914–15 (Ohio 1936). The doctrine, in a sense, can be understood as an information-forcing rule. The party with the best information (the defendant who is maintaining the premises) now has an incentive to determine how the accident actually occurred on pain of being held liable if he is unable to offer a sound explanation. *Id.* at 915.[5]

---

[5] Res ipsa loquitur "is a salutary rule in some cases. The derailment of a passenger train, for instance. The injured passenger has no means of knowing the cause of the derailment. He pleads and proves that the train and tracks were under the sole and exclusive control of the railway company, that there was a derailment, and that such derailment was the proximate cause of his injuries. He has made his case, and the law, under the rule of res ipsa loquitur,

The central problem with applying that line of reasoning here is that res ipsa is strictly limited to accidents of a type that do not occur absent negligence. *Jennings Buick, Inc. v. City of Cincinnati*, 406 N.E.2d 1385, 1388 (Ohio 1980) ("[T]hat there must be evidence tending to prove that the injury ordinarily would not have occurred if ordinary care had been exercised[] serves to establish the logical basis for the inference that the plaintiff's injury was the proximate result of someone's negligence."). But the problem here is that people often trip over their own feet, for any reason or no reason at all. *Ray v. Wal-Mart Stores, Inc.*, 993 N.E.2d 808, 828 (Ohio Ct. App. 2013) ("[B]ecause multiple inferences may be drawn from the evidence, [plaintiffs] are not entitled to invoke the doctrine of *res ipsa loquitor* to infer [defendant's] negligence."). And that is particularly true of people wearing thin-soled sandals, where the toe of the shoe may catch and turn over merely from friction with the floor itself (even sans the existence of another hazard). Accordingly, the Court concludes that res ipsa would not apply on the facts here, which means Combs must prove that the accident occurred due to an unreasonably unsafe condition, not that Wal-Mart must disprove that allegation. And on the record here, Combs has not offered admissible evidence to carry that burden.

### 2. Notice

Separately, even assuming the Court could indulge Combs's speculation about the nature of the hazard, she has presented no evidence that Wal-Mart had actual or

---

says to the railway company: 'Explain this derailment, remove this inference of negligence, or respond in damages.'" *Sherlock*, 4 N.E.2d at 915.

constructive notice of that hazard, which is necessary to establish Wal-Mart's duty to her with respect to that hazard. *Goodin*, 1993 WL 220246, at *2. Nothing in the summary judgment record would enable a Court to draw any inference about Wal-Mart's notice. The sole basis for Combs's theory that notice of some alleged hazard can be imputed to Wal-Mart are the statements in her declaration that the floor had no remnants of broken grout around where she tripped, which implies the area had been swept. (Doc. 21, #311–12 (citing Doc. 22 ¶¶ 9–10, #337)). But those assertions are outside the scope of the record. *See supra* Part A.1. And her failure to articulate the nature of the hazard that caused her tumble at her deposition means Combs has put forward nothing about this supposed hazard that would permit the Court to find Wal-Mart had any form of notice. The lack of notice is fatal to Combs's claim because that means, as a matter of law, Wal-Mart owed Combs no duty of care with respect to the alleged hazard (assuming it even existed). *Goodin*, 1993 WL 220246, at *2.

*    *    *

For both the elements of duty and breach, Combs lacks evidence to support her negligence claim.[6] She has not identified a genuine issue of fact about the existence

---

[6] Because the Court must dismiss the action due to Combs's wholesale lack of evidence to support her negligence claim (failing even to retain an investigator to visit the store and to take pictures of the location of the accident, or at least failing to report the results of any such investigation), the Court need not and does not reach Wal-Mart's alternate argument that it is not liable because the hazard (whatever that may have been) was open and obvious. (Doc. 20, #298–99). But the Court briefly notes that Combs's objection to the application of the open-and-obvious doctrine also faced some obstacles. Her theory is that an unobstructed gap in the floor tiles was not substantial enough to be readily observed but nonetheless so substantial as to occasion tort liability. (Doc. 21, #310–11). Ohio law creates challenges for such claims. *See Raflo v. Losantiville Country Club*, 295 N.E.2d 202, 204 (Ohio 1973) ("This attempt to designate a defect as insubstantial for the purpose of notice … but substantial for

of the hazard that allegedly harmed her or about Wal-Mart's notice of that supposed hazard (actual or otherwise). Her claim therefore fails.[7]

## CONCLUSION

Simply, Combs has failed to put forward competent evidence sufficient to prove her entitlement to relief despite having nearly a year of discovery to do so. The gap in the summary judgment record means she would be unable to meet her burden at trial. Thus, Combs's claim fails as a matter of law. Accordingly, the Court **GRANTS** Wal-Mart's, Motion for Summary Judgment (Doc. 20) and **DISMISSES** Combs's Complaint (Doc. 4) **WITH PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

February 12, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

the purpose of imposing liability for a fall … shows an ambivalence with which we cannot concur. Injuries occasioned by insubstantial defects should not be actionable unless circumstances render them 'unreasonably dangerous.'"); *see also supra* note 4.

[7] One passing final remark. What footwear Combs had on ultimately was not material to the Court's analysis. But, contrary to Combs's contention, (Doc. 21-1, #323), the fact that she wore flip-flop sandals when she fell could certainly be relevant to whether her claim has merit. There is a non-frivolous argument under Ohio law that Combs's negligence claim seeks to hold Wal-Mart liable for a risk created by her "wearing inappropriate footwear[,] … not one due to the condition of defendant's premises." *Cornell v. Aquamarine Lodge*, 467 N.E.2d 896, 898 (Ohio Ct. App. 1983).